1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9  J.C., et al.,
10            Plaintiffs,                    No. C 06-02337 JSW
11   v.
12  CALIFORNIA SCHOOL FOR THE DEAF;          **ORDER DENYING MOTION TO**
    CALIFORNIA DEPARTMENT OF                 **DISMISS AND DENYING**
13  EDUCATION; and FREMONT UNIFIED           **MOTION TO STRIKE**
    SCHOOL DISTRICT,
14
            Defendants.
15  _____/
16
17          Now before the Court is a motion to dismiss the second and third claims for relief for
18  failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil
19  Procedure 12(b)(6) filed by the California School for the Deaf and the California Department of
20  Education (collectively, "Defendants").[1]  Defendants also move to strike paragraphs 16 through
21  24, and subdivisions (g) and (h) of paragraph 51 of the First Amended Complaint pursuant to
22  Federal Rule of Civil Procedure 12(f).  Having reviewed the parties' papers and considered
23  their arguments and the relevant legal authority, and good cause appearing, the Court hereby
24  DENIES Defendants' motion to dismiss and DENIES Defendants' motion to strike.
25
26
27
28
_____

[1] Although Fremont Unified School District is named as a defendant, only the California School for the
Deaf and the California Department of Education move to dismiss and move to strike certain paragraphs of the
First Amended Complaint.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

This action arises out of a dispute between Plaintiff's parents, N. Chang and L. Chang, and Defendants regarding the appropriate placement for J.C., a 13 year old child who has been diagnosed as deaf, autistic, and cognitively impaired.  J.C. is a resident of Fremont, California, and a student in the Fremont Unified School District ("FUSD").  J.C. has attended  the California School for the Deaf ("CSD") since the age of 20 months.  (Compl. ¶ 14.)  Her parents allege that during J.C.'s attendance at CSD, her elementary school teacher frequently told Mrs. Chang that J.C. was "unfit" for CSD's special needs program, that she was "unmotivated" and unable to participate in the activities.  (Compl. ¶ 19.)  The CSD staff frequently called Mrs. Chang to pick J.C. up early for several "pretextual reasons:" J.C.'s aide was unavailable, J.C. had a cold or a headache.  (Compl. ¶ 20)  However, when Mrs. Chang picked J.C. up, it was apparent that J.C. was well and able to be in school.  (*Id.*)  Plaintiff's parents further contend that in 1997, they and five other families arranged for CSD to receive training on autism for free, but CSD refused the training, stating that it would not introduce any outside programs.  (Compl. ¶ 16.)

In Fall 1999, CSD conducted an evaluation of J.C.'s performance and behavior.  (Compl. ¶ 17.)  CSD determined that J.C. remained eligible for special education services due to her developmental disability and deafness.  (*Id.*)  At an Individualized Education Plan ("IEP") meeting on April 28, 2004, Defendants proposed transferring J.C. out of CSD into a Special Day Class for moderately to severely autistic students at Maloney Elementary School ("Maloney") in FUSD on the basis that she was not making progress at CSD.  (Compl. ¶ 29.)  Plaintiff's parents initiated a due process hearing regarding the proposed placement.  (*Id.*)  Subsequently, the parents and Defendants entered into a settlement agreement which provided that J.C. attend CSD in the mornings and a school district program for autistic students at Maloney with a signing aide in the afternoons for the 2004-05 school year.  (*Id.*)

Plaintiff's parents allege that during the 2004-05 school year, J.C. was excluded from swimming lessons during physical education class when she wet herself due to an aide's failure to take her to the bathroom.  (Compl. ¶ 26.)  Moreover, Plaintiff's parents allege that an aide

1    informed them that J.C. was often left alone on the couch outside the CDS classroom without

2    any learning activities or assignments, and J.C.'s elementary school teacher admitted that she

3    purposefully left J.C. alone during the day.  (Compl. ¶ 25.)

4         In April 2005, during another IEP meeting, Defendants again proposed transferring J.C.

5    full time to FUSD's Special Day Class for autistic students for the 2005-06 school year.

6    (Compl. ¶ 31.)  Plaintiff's parents refused to consent to the proposed placement on the basis that

7    J.C. would be denied an education with a teacher and peers who utilize J.C.'s primary language,

8    American Sign Language ("ASL").  (*Id.*)  In September 2005,  J.C. received a new aide who

9    was fluent in ASL.  (Compl. ¶ 27.)   The new aide noticed improvement in J.C.'s level of sign

10   language and responsiveness under her assistance.  (*Id.*)  When the CSD staff discovered that

11   the new aide was discussing J.C.'s progress with Mrs. Chang, they reprimanded her and ordered

12   her not to report to Mrs. Chang about J.C.  (*Id.*)

13        On September 4, 2005, CSD requested a due process hearing pursuant to the IDEA

14   seeking to enforce the proposed placement.  (Compl. ¶ 32.)  Plaintiff's parents filed a Counter

15   Petition and Motion to Consolidate, alleging that CSD and the California Department of

16   Education ("CDE") failed to provide J.C. with an education in her primary language, and that it

17   was purposefully failing to educate J.C. appropriately to prevent her from progressing at CSD

18   so that it could justify transferring her out of the school.  (*Id.*)  During an administrative

19   hearing, the Administrative Law Judge concluded that while J.C.'s primary language is ASL,

20   FUSD's autism program for hearing children was appropriate for J.C.  (Compl. ¶ 34.)

21        On January 6, 2006, The Diagnostic Center, an independent testing center of child

22   development, issued its triennial assessment report for J.C. to the CSD and FUSD.  (Compl. ¶

23   35.)  The report stated that J.C. communicates using ASL, but that she could not incorporate the

24   facial expressions due to Bell's Palsy, a condition that weakens and sometimes paralyzes the

25   facial muscles.  (*Id.*)  The report also revealed that J.C. was reluctant to communicate in ASL at

26   CSD and exhibited considerable anxiety while at CSD, but felt more comfortable signing to her

27   aide at Maloney.  (*Id.*)  The report also found that one of J.C.'s strengths was her vocabulary in

28   sign language.  (*Id.*)  Plaintiff's parents also maintain that in January 2006, J.C.'s CSD math

1    teacher did not give her any work during math class; her desk was empty while other students

2    worked on math assignments.  (Compl. ¶ 28.)

3         Plaintiff, by and though her parents, filed a suit against Defendants alleging that CSD

4    denied her a free appropriate public education ("FAPE") in violation of the Individuals with

5    Disabilities Education Act ("IDEA"), and that CSD systematically discriminated against J.C. on

6    the basis of her additional disabilities in violation of the Americans with Disabilities Act

7    ("ADA") and the Rehabilitation Act ("RA").  Defendants moved to dismiss Plaintiff's claims

8    under the ADA and RA, and moved to strike certain prayers for relief as well as paragraphs 16

9    through 24 as immaterial, impertinent, and scandalous under a Settlement Agreement release

10   provision fully executed on December 13, 2004.

**ANALYSIS**

**I.     Motion to Strike.**

**A.     Legal Standard.**

14        Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any

15   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

16   matter."  Immaterial matter "is that which has no essential or important relationship to the claim

17   for relief or the defenses being pleaded."  *Cal. Dept. of Toxic Substance Control v. ALCO*

18   *Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations

19   omitted).  Impertinent material "consists of statements that do not pertain, or are not necessary

20   to the issues in question."  *Id.*  Scandalous material "casts a cruelly derogatory light on a party

21   or other person."  *In re 2TheMart.com, Inc. Sec. Litig.,* 114 F. Supp. 2d 955, 965 (C.D. Cal.

22   2000).  Motions to strike are regarded with disfavor because they are often used as delaying

23   tactics and because of the limited importance of pleadings in federal practice.  *Colaprico v. Sun*

24   *Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  The possibility that issues will

25   be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw

26   unwarranted inferences at trial is the type of prejudice that is sufficient to support the granting

27   of a motion to strike.  *Cal. Dept. of Toxic Substances Control*, 217 F. Supp. at 1028.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**B.     Paragraphs 16 through 24 and Prayers for Relief.**

Defendants contend that the factual allegations in paragraphs 16 through 24 must be stricken because they are immaterial, impertinent, and scandalous in light of a settlement agreement reached by the parties in December 2004.  The Settlement Agreement appears to waive possible pre-existing claims before December 2004.  Defendants admit in their briefs and at oral argument that attaching the Settlement Agreement to the motion to strike converts the motion to a motion for summary judgment.  *See e.g.* Reply Br. at 3; *Wailua Associates v. Aetna Cas.* & Sur. Co., 183 F.R.D. 550, 554 (D. Haw. 1998); Schwarzer *et al., Cal. Prac. Guid: Federal Civil Procedure Before Trial* §§ 9:403 (Rutter Group 2006).  Accordingly, because the motion must be converted to a motion for summary judgment, and Plaintiff indicated at oral argument that she intends to offer evidence of the circumstances surrounding the execution of the Settlement Agreement, the Court must deny the motion to strike as to paragraphs 16 through 24 based on the disputed provision of the Settlement Agreement.  *See Pacific Gas & E. Co. v. G.W. Thomas Drayage,* 69 Cal. 2d 33, 38, 40 (1968) (extrinsic evidence of the circumstances surrounding the making of a contract is admissible to prove the existence of ambiguity in a contract).

Defendants also move to strike paragraph 51(g) in the prayer for relief of the complaint, in which Plaintiff seeks to require Defendants to provide a program for deaf children with multiple disabilities, on the ground that CSD already has a program for deaf children with multiple disabilities.[2]  (Mot. at 5.)  Plaintiff contends that whether the Court grants Plaintiff's prayer for relief in paragraph 51(g) depends on whether CSD's program for deaf children with multiple disabilities provides a FAPE as required under the IDEA.  (Opp. Br. at 7).  Because this prayer for relief depends on the merits of Plaintiff's claim that Defendants violated the IDEA by failing to provide J.C with a FAPE, this Court cannot strike paragraph 51(g) as a matter of law.  *See W.G. v. Bd. of Trs. of Target Range Sch. Dist.,* 960 F.2d 1479, 1483 (9th Cir.

---

[2] Defendants also move to strike paragraphs 51(e) and 51(f) in the prayer for relief, which correspond to the ADA and RA claims respectively.  Defendants' request to strike these paragraphs is denied based upon the Court's ruling on the motion to dismiss.

United States District Court

For the Northern District of California

1    1992) ("Whether the school district's proposed IEP was a 'free appropriate public education' as

2    required by the [IDEA] is a mixed question of law and fact . . . .").

3          Defendants further contend that paragraph 51(h), by which Plaintiff seeks monetary

4    damages under the IDEA, must be stricken because monetary damages under the IDEA are

5    unavailable as a matter of law.  (Mot. at 6.)  Where a plaintiff alleges injuries that could be

6    redressed to some degree by the IDEA's administrative procedures and remedies, the plaintiff

7    must exhaust these procedures and remedies.  *Robb v. Bethel Sch. Dist.,* 308 F.3d 1047, 1054

8    (9th Cir. 2002).  However, when a plaintiff seeks monetary damages after exhausting all

9    administrative remedies available under the IDEA, and plaintiff's injuries cannot be redressed

10   to any extent by the IDEA's administrative procedures and remedies, monetary damages can be

11   awarded.  *See id.* (construing *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1276 (9th Cir.

12   1999)).  Injuries falling into this narrow exception for an award of monetary damages under the

13   IDEA are limited to injuries such as physical abuse of the student.  *See id.* at 1052 ("The

14   [plaintiffs] are in a very different position form the claimant in *Witte.*  They have not taken full

15   advantage of the IDEA administrative procedures to secure the remedies available thereunder.

16   They do not claim physical injury.").  Thus, because monetary damages can be awarded under

17   the IDEA for a very narrow class of injuries, the Court cannot find that monetary damages are

18   unavailable as a matter of law in this case.  Moreover, Plaintiff alleges that she has exhausted

19   all administrative remedies.  (Comp. ¶ 8.)  Similar to the posture on a motion to dismiss, in

20   deciding a motion to strike, the Court must view the pleadings in a light most favorable to the

21   Plaintiff.  *See In re 2TheMart.com,* 114 F. Supp. 2d at 965 (citing *California v. United States,*

22   514 F. Supp. 36, 39 (N.D. Cal. 1981)).  Accordingly, the Court denies the motion to strike

23   paragraph 51(h).

24   **II.    Motion to Dismiss.**

25          **A.    Legal Standard.**

26          A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

27   claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss are

28   viewed with disfavor and are rarely granted.  *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th

6

United States District Court

For the Northern District of California

Cir. 1986).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).   The liberal system of notice pleading does not require a plaintiff to set out in detail the facts upon which she bases a claim; on the contrary, all that is required is a short and plain statement of the claim that will give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001).

### B.  Plaintiff's ADA and § 504 of the RA Claims.

Plaintiff and her parents allege that Defendants systematically discriminated against J.C. on the basis of her additional disabilities in violation of Title II of the ADA and § 504 of the RA.  (Compl. ¶¶ 3, 45, 46.)

Title II of the ADA provides: "Subject to the provisions of this chapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In order to state a claim under the ADA, a plaintiff must make a prima facie showing that: (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and, (3) such discrimination was by reason of her disability.  *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002).  In order to show a violation of § 504 of the RA, a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and, (4) the program providing the benefit or services receives federal financial assistance.  *Id.*

United States District Court

For the Northern District of California

1    To the extent that the ADA and RA create essentially the same rights and obligations,

2  this Court will apply the same analysis to determine whether Plaintiffs have stated a claim for

3  which relief can be granted under the ADA and the RA.  *See Zukle v. Regents of the University*

4  *of California,* 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in

5  the analysis of rights and obligations created by the ADA and the Rehabilitation Act. . . . Thus,

6  courts have applied the same analysis to claims brought under both statutes.") (internal citations

7  omitted).  Thus, in order to plead a claim under either the ADA or the RA, Plaintiff must show

8  (1) she is disabled under the Act; (2) she is "otherwise qualified" to remain at CSD; *i.e.*, she can

9  meet the essential eligibility requirements of the school, with or without reasonable

10  accommodation; (3) she was excluded solely because of her additional disabilities; and, (4)

11  CSD receives federal financial assistance (under the RA), or is a public entity (under the ADA).

12  *See id.* at 1045.

13    Here, it is undisputed that Plaintiff is disabled within the meaning of the ADA and the

14  RA, and that Defendants are public entities and receive federal financial assistance.  (*See* Reply

15  Br. at 3.)  The issues are whether J.C. is "otherwise qualified" and whether Defendants have

16  excluded her solely on the basis of her additional disabilities.  Under the "otherwise qualified"

17  element, J.C. alleges that she is otherwise qualified to attend CSD because CSD's objective is to

18  educate the deaf, who, because of their severe hearing loss and educational needs, cannot be

19  provided an appropriate educational program and related services in the regular public schools.

20  (Compl. ¶¶ 15, 17.)  She further alleges that based on a CSD's 1999 evaluation of her

21  performance and behavior, she "remained eligible for special education services" due to her

22  developmental disability and deafness.  (Compl. ¶ 17.)  Moreover,  J.C. has attended CSD since

23  the age of 20 months.  (Compl. ¶ 14.)

24    Defendants argue that J.C. is not otherwise qualified because she is not entitled to attend

25  CSD solely by virtue of her deafness.  Defendants contend there are certain "criteria" for

26  admission to CSD.  (Reply Br. at 3-4).  Specifically, during oral argument, Defendants asserted

27  that Plaintiff fails to meet the criterion requiring that she have the ability to benefit from a deaf

28  education.  Defendants disagreed with the proposition that but for J.C.'s additional disabilities,

she would be qualified to attend CSD.  Rather, they argue that her inability to participate in the classroom prevents her from benefitting from an education at CSD.  Moreover, according to Defendants, J.C's admission to CSD was a result of an oversight where she was inadvertently promoted to kindergarten after participating in CSD's daycare program.  Therefore, Defendants argue, J.C. was never properly admitted through CSD's formal admissions process.

However, the Court finds that as pled, Plaintiff has established that she is "otherwise qualified" to attend CSD based on construing the facts most favorably to her, and in particular, in view of CSD's 1999 determination that J.C. remained eligible for special education benefits and J.C.'s longstanding attendance at CSD.

Under the discrimination element, Plaintiff alleges that CSD discriminated against her because she is autistic and cognitively impaired in addition to being deaf.  (Compl. ¶ 15.)  To support this allegation, Plaintiff's parents contend that according to J.C.'s aide, J.C. was often left alone on the couch outside the CSD classroom without any learning activities or assignments.  (Compl. ¶ 25.)  Furthermore, during a workshop session in 2005, J.C.'s CSD elementary teacher admitted to her parents that she "purposefully left [J.C.] alone during the day."  (*Id.*)  Moreover, Plaintiff's parents allege that CSD excluded J.C. from swimming lessons because she wet herself in the locker room after her aide failed to take her to the bathroom.  (Compl. ¶ 26.)  In addition, in January 2006, J.C.'s math teacher did not give her any work during math class and her desk was empty while other students worked on math assignments.  (Compl. ¶ 28.)

Defendants contend that "the fact that defendants determined that J.C.'s unique needs could be best met in a program for autistic children offered by FUSD is not a violation of either the ADA, or the Rehabilitation Act."  (Mot. at 8.)  Defendants argue that they are not discriminating against J.C. by making educational placement decisions based on her category of disability.  Rather, and without citation to authority, Defendants contend they are acting pursuant to the "basic premises" of the IDEA, which requires that placement decisions be made

9

by considering a student's "current levels of abilities," the child's "strengths and weaknesses," and the kind of program that can best provide a FAPE for the individual child.  (Mot. at 7.)

At this stage of the proceeding, the Court must liberally construe the factual allegations in the pleadings in a light most favorable to the Plaintiff.  *See e.g., Lee,* 250 F.3d at 679.  In light of Plaintiff's factual allegations of having been purposefully excluded from math class and swimming lessons, and having been left alone outside of the classroom without any assignments, this Court finds that Plaintiff alleged facts sufficient to establish a prima facie showing of discrimination based her on autism and cognitive disabilities under both the ADA and RA.  Accordingly, Defendants' motion to dismiss is denied.

### CONCLUSION

For the foregoing reasons, the Court hereby DENIES the motion to strike and DENIES the motion to dismiss.

**IT IS SO ORDERED.**

Dated: October 5, 2006

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

10